Robert A. ADAMS, a protected person, by and through his conservators, Michael ADAMS, and Stephanie Adams, Plaintiff–Appellee,

v.

CITY OF WESTMINSTER, a Colorado municipal corporation, Defendant–Appellant.

No. 03CA2007.

Colorado Court of Appeals, Div. III.

May 5, 2005.

Certiorari Denied June 26, 2006.

Purvis, Gray & Murphy, LLP, John A. Purvis, Michael J. Thomson, Boulder, Colorado, for Plaintiff–Appellee.

Clisham, Satriana & Biscan, LLC, Daniel R. Satriana, Jr., Denver, Colorado; Hall & Evans, LLC, Andrew D. Ringel, Denver, Colorado; Jeffrey M. Betz, Assistant City Attorney, Westminster, Colorado, for Defendant–Appellant.

CASEBOLT, J.

Defendant, the City of Westminster, appeals the order denying its motion seeking summary judgment and dismissal, on governmental immunity grounds, of the complaint of plaintiff, Robert A. Adams. We affirm.

Plaintiff alleged that the City failed to provide fringe benefits to him as part of his employment as a lifeguard. His complaint asserted claims for breach of contract and promissory estoppel.

Arguing that plaintiff's claims lie in tort or could lie in tort and therefore are barred by the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2004, the City moved for summary judgment. After a hearing, the trial court denied the City's motion in its entirety, finding the existence of genuine issues of material fact. However, the court did not address the City's GIA arguments.

The City then brought this interlocutory appeal pursuant to § 24–10–108, C.R.S.2004. A motions division of this court remanded the case to the trial court to address the City's GIA arguments. The trial court issued a supplemental order in which it concluded that plaintiff's claims sounded in contract, not tort, and the case was then re-certified for appeal.

The City contends the trial court erred in concluding that plaintiff's claims do not and could not lie in tort. It asserts that the essence of the claims is that the City negligently failed to enroll plaintiff in health insurance coverage in a timely manner. We are not persuaded.

Sovereign immunity issues concern subject matter jurisdiction and thus are determined in accordance with C.R.C.P. 12(b)(1). *See Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). If, as here, the underlying jurisdictional facts are undisputed, the issue is one of law, and a reviewing court is not bound by the trial court's determinations. *City of Colorado Springs v. Conners*, 993 P.2d 1167 (Colo.2000); *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993).

Except as set forth in the GIA, "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." Sections 24–10–106(1), 24–10–108, C.R.S.2004; *see City & County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d

759 (Colo.1992). However, the GIA is not intended to apply to actions grounded in contract, *see State Pers. Bd. v. Lloyd*, 752 P.2d 559 (Colo.1988), or in promissory estoppel. *See Bd. of County Comm'rs v. DeLozier*, 917 P.2d 714 (Colo.1996).

■ Because governmental immunity is in derogation of Colorado's common law, the grant of immunity is to be strictly construed. *See Tidwell v. City & County of Denver*, 83 P.3d 75 (Colo.2003).

■ Under the GIA, the form of the complaint does not determine whether the claim is based in tort or contract. Rather, the dispositive question is whether the claim is a tort claim or could be a tort claim for purposes of the GIA. In barring not only tort claims, but also claims that could lie in tort, the GIA mandates close examination of the pleadings and undisputed evidence. *Berg v. State Bd. of Agric.*, 919 P.2d 254 (Colo.1996). The court should review the nature of the alleged injury and the relief sought and examine whether the injury arises from the terms of a contract. *CAMAS Colo., Inc. v. Bd. of County Comm'rs*, 36 P.3d 135 (Colo. App.2001); *Elliott v. Colo. Dep't of Corr.*, 865 P.2d 859 (Colo.App.1993).

In making this determination, we must be mindful of the statutory definition of "injury." Another division of this court, reading the definition of "injury" contained in § 24–10–103(2), C.R.S.2004, into the indemnification provisions of § 24–10–110, C.R.S.2004, has held that the GIA was intended to apply when the claimant seeks redress from injuries that result from tortious conduct. *See City & County of Denver v. Blatnik*, 32 P.3d 593 (Colo.App.2001). Indeed, cases interpreting the GIA generally support the view that governmental immunity is immunity from actions seeking compensatory damages for personal harms or injuries. *See City of Colorado Springs v. Conners, supra.*

Here, on July 28, 1998, plaintiff applied for a lifeguard position with the City. He interviewed with the pool manager for a .8 full-time equivalent (FTE) position, which offered fringe benefits, including general leave, health insurance, and life insurance. Because plaintiff had a prior employment termi-

nation on his record, the manager offered a .2 FTE nonbenefited position with a thirty-day probationary period. The pool manager stated that she would hire plaintiff for the .8 FTE position if he successfully completed his probationary period.

On September 30, 1998, after completion of the probationary period, the pool manager recommended plaintiff for the .8 FTE lifeguard position. The recommendation was certified on October 1, 1998, and in early October 1998, plaintiff was offered the .8 FTE position. Plaintiff underwent a physical examination for the position on October 20, 1998, and was scheduled for an orientation on October 26, 1998, at which he could have selected a health insurance plan.

On October 24, 1998, plaintiff was shot in the head and suffered permanent brain damage. The City subsequently terminated his employment effective October 25, 1998, on the basis that he could not return to work.

Before the shooting, plaintiff had been working a .8 FTE position for the City. Additionally, evidence plaintiff submitted demonstrated that all lifeguards who were receiving benefits were referred to as a "Manager on Duty," and they were responsible for preparing the daily maintenance logs and also for opening and closing the pools. Records kept by the City showed that plaintiff was scheduled as a "Manager on Duty" on Saturdays and Sundays. Plaintiff also filled out the daily maintenance logs during September and October 1998 and closed the pools. In addition, on a telephone list, a handwritten arrow went from plaintiff's name to a section where managers on duty were listed.

For a number of reasons, we conclude that plaintiff's claims do not lie, nor could they lie, in tort.

First, the nature of the alleged injury arises from the terms of a contract of employment. The undisputed evidence establishes that the City entered into a contractual employment relationship with plaintiff in which the City promised to promote him to the .8 FTE position with fringe benefits upon his satisfactory performance during the probationary period; that he successfully completed the probationary period; that he was

actually performing the equivalent of a .8 FTE job before the shooting; that the City offered, and he accepted, the .8 FTE position, which was intended to provide fringe benefits; and that the City has declined to provide fringe benefits following the shooting. The nature of the injury arises from the City's asserted failure to provide the bargained-for benefits, whose genesis lies in the contract of employment.

Second, the record does not reflect that plaintiff has claimed damages for personal harms or injuries. Instead, plaintiff seeks to recover the value of the fringe benefits that he asserts should have been provided to him. Thus, the relief sought is the value of the contract benefits not provided.

■ Third, plaintiff has not sought redress for injuries that result from tortious conduct. Tortious conduct arises from a breach of a duty imposed by law, not by contract. The source of the duties plaintiff alleges have been breached is the contract of employment. As the supreme court noted in *Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256, 1262 (Colo.2000):

> Tort obligations generally arise from duties imposed by law. Tort law is designed to protect all citizens from the risk of physical harm to their persons or to their property. These duties are imposed by law without regard to any agreement or contract.
>
> In contrast, contract obligations arise from promises made between parties. Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining.

In *Town of Alma v. Azco,* the court adopted the economic loss rule and held that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.

Here, plaintiff has not asserted that the City breached a duty imposed by law to protect all citizens from a risk of harm, nor could he successfully do so. Instead, the essence of plaintiff's claim is that he has suffered economic losses arising from the employment contract. Under the economic loss rule, it is highly doubtful that plaintiff could assert a tort claim against the City. *See Parr v. Triple L & J Corp.,* 107 P.3d 1104 (Colo.App.2004) (economic loss rule generally bars economic damages; a party suffering only economic loss may not assert a tort claim arising from the breach of a contractual duty; economic loss is defined generally as damage other than physical harm to persons or property). Therefore, plaintiff's claim could not "lie in tort" under the provisions of the GIA, thus defeating the City's contention that the claim is or could be based on negligence because of alleged delay in processing his .8 FTE lifeguard position that would have provided him with health insurance benefits.

■ That the contract does not specify the effective date of the promotion plaintiff was promised, and the concomitant timing of the benefits that plaintiff asserts should have been provided to him, does not mandate that the claim could lie in tort. In the absence of a specific time for performance in the contract, the law implies a reasonable time. *See Shull v. Sexton,* 154 Colo. 311, 390 P.2d 313 (1964).

Additionally, as the record demonstrates, plaintiff's complaint is alternatively grounded upon the City's alleged promise to provide him with fringe benefits when he began working as a .8 FTE lifeguard. Accordingly, under these facts, we conclude that plaintiff's claim is also based on a quasi-contract theory of promissory estoppel.

■ The City nevertheless contends that we should review the merits of plaintiff's contract and promissory estoppel claims in determining whether the GIA bars them. It asserts that a merits-based review is not markedly different from the case-by-case review contemplated by the GIA and that, so analyzed, because the claims fail on their merits, they must be tort claims. We decline to conduct such a review.

The City has not provided any authority for this proposition, nor have we found any. Moreover, if plaintiff's contract claims fail on their merits, summary judgment or other

pretrial disposition may be available to the City upon proper motion.

In addition, interlocutory appeals under § 24–10–108 are limited to determining issues of sovereign immunity. Determining merits-based issues would expand the nature of appellate review beyond that mandated by statute. *See Mattson v. Harrison,* 929 P.2d 41 (Colo.App.1996) (whether an employee's act or omission was willful or wanton does not present a sovereign immunity issue; hence no interlocutory review available).

For these reasons, the trial court did not err in denying the City's motion.

The order is affirmed.

Judge DAILEY and Judge KAPELKE\* concur.